UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION #

_____

Jason M., with and through his parents
T.M. Mother and J.M. Father

V.

Plymouth Public Schools

_____

**COMPLAINT   AND   DEMAND   FOR JURY   TRIAL**

1.     This is an action seeking redress for the denial of equal educational opportunity, violation of civil rights, and severe physical, emotional and psychological harm caused by the defendants. The defendants at all times acted intentionally and/or with deliberate indifference in their failure to properly supervise and oversee student , as well as their failure to properly investigate disclosures of   Jason's significant emotional injury, and that of his parents. The defendants acted intentionally and/or with deliberate indifference in their failure to provide effective services for more than six months to Jason to address the educational, social and emotional harms he and his family suffered as a result of the defendants' actions and substantial non-action.

2.     The plaintiffs seek relief pursuant to 42 U.S.C. § 1983, 29 U.S.C. § 794,   Mass. Gen. L. c. 12 § 11(I), 42 U.S.C. § 12131, 20 U.S.C. § 1681, Mass. Gen. L. c. 258 § 2, Mass. Gen. L. c. 93 § 102, Mass. Gen. L. c. 214 § 1C, Massachusetts common law and the Constitutions of the United States and the Commonwealth of Massachusetts and plaintiffs also seek relief pursuant to Title IX, 20 U.S.C. section 1681.

## PARTIES

3. The plaintiff, J.M. is an adult resident of Plymouth Massachusetts. J.M. is the Father of the minor Jason M. and brings this action individually and as the next friend of Jason M..

4. The plaintiff, T. M. is an adult resident of Plymouth, Massachusetts. T.M. is the mother of the minor child, Jason M, and brings this action individually and as the next friend of Jason M.

5. During all relevant periods, the plaintiff, Jason M. was a minor student who was entitled to be provided services by the Plymouth Public Schools and a resident of Plymouth, Massachusetts.

6. The defendant, Plymouth Public Schools, is the civil entity in the Town of Plymouth which was and is responsible for Jason M's education during all of the times relevant to this action. The Plymouth School District ("District") is in recipient of federal financial assistance, including federal financial assistance provided for the District's schools and specialized education programs, services and placements.

## ARGUMENT

7. Jason is a young man with Down Syndrome and Autism Spectrum Disorder as well as Intellectual Disability, IQ of 46 below the 1st percentile, Communication Disorder, Sleep Disorder, and TVI.

8. Jason has a documented history of dysphasia (I.e., swallowing disorder) and maintains a lactose- and gluten-free diet, eating foods that are ground. Jason requires access to augmentative communication modalities (e.g., choice board; picture exchange communication system [PECS]) as he does not produce spoken language spontaneously, or imitatively, nor does he use purposeful signs or gestures to self-express.

9. Jason demonstrates reported extreme vulnerability in the adaptive behavior domain as he

requires support to complete self-care routines (e.g., toileting; bathing; dressing) and displays absolutely no degree of safety awareness (e.g., can escape a 5 way safety harness, will pull hair of the driver, will throw a book or toy, break off a piece of the van to throw at the head of the driver, will disrobe despite the harness and specialized undergarments, while disrobing will throw or smear feces on the windows or seatbelts or wherever he can reach, even with an extra person assigned to sit next to him – this happened frequently both on the school transport and with parents) requiring constant supervision.

10. Jason's behavior profile is remarkable for topographies of aggression (e.g., hitting; pinching; scratching; pulling hair; grabbing, grabbing and bending fingers backward, head butting), self-Injury (e.g.. picking skin; scratching and pinching; banging or hitting his head, jamming his arm or leg in between the balusters of a staircase, shower door, refrigerator door or handle, oven door, or dishwasher), and mouthing (e.g., putting inedible objects, often dangerous into his mouth), along with disrobing and fecal smearing.

11. Jason attended the Cardinal Cushing School Day Program in Hanover from December 2011 to August 2016 while living with his family. At the end of August Jason was terminated from attending Cardinal Cushing School. Additionally they felt he was not a candidate for their residential program due to his complex disability profile, low intellectual ability, and behavioral presentation and he would not have a cohort of peers. His last months at Cardinal Cushing were problematic as he required more than one staff member and frequently he ended up separated by himself alone in a room with adults. By June the school was calling daily for parents to pick him up early. The school provided transportation could not handle him even with extra staff and parents were required to transport if they wanted Jason to attend school.

12. Parents were forced to keep Jason at home without supports as the Plymouth School District did not

provide an IEP (ended 11/ 2016 but hadn't been followed since leaving Cardinal Cushing in 8/2016 and Plymouth did not write a new one saying there was no team to do so.) or FAPE or any educational program until December of 2016 when he was placed in the Evergreen Center, a residential program.   Due to the complexity of his disabilities including challenging behaviors, low intellectual ability, lack of communication, low adaptive skills, and medical issues,   25 special education schools, known for their ability to handle difficult children, rejected Jason as his behaviors and complex profile were so severe.

13. After Cardinal Cushing excluded him from the program, he fell apart emotionally, was scared and acted out in an aggressive manner.   On a daily basis, Jason would hit, kick, bite, scratch, pinch, grab fingers and bend them backward, and throw items at his family.   Whenever he could, he often ate or played with his own feces and also threw feces at family members. This was an issue for years but was much worse when he was without an IEP or a program or services for 5 months.

14. Jason has consistently exhibited maladaptive behaviors within not only the public school but in the home and in the community.   The behavior includes but not limited to:

   A. **Self-Injurious behaviors**:    Which are his attempts of Jason scratching, himself, or hitting his head with his hand intensely.

   B. **Aggression:**     Which are his attempts and instances of pinching, scratching, hitting, kicking, biting, throwing an object at another person, or hair pulling other people.

   C. **Grabbing**:     Seen as any attempt or instance of Jason placing his fingers or hands around the body part (i.e. arm) or clothing of another person (i.e. shirt) that is out of context.

   D. **Fecal Smearing**:   Attempts or instance of Jason smearing fecal matter on himself, others, or objects (he constantly smeared feces on the walls of his home).

E.     **Disrobing**:   attempts and instance of removing his clothing that is out of context which occurs in public, vehicles and most anywhere.

F.     **Grounding**:   attempts to flop to the floor and refuse to get up or walk

G.     **Inedibles:**   Attempts of putting inedible objects in his mouth

H.     **Tantrums**:     Jason's behaviors occurring simultaneously including; aggression, self-injury, property destruction, crying, lasting substantially longer than 10 seconds.

I.     **Inappropriate Sexual behavior towards self**:    Attempts to make contact with his private parts other than to utilize the bathroom as Jason rubs his private parts against an object for 3 or more consecutive seconds and while in public on a regular basis.

15.    The Plymouth Schools and parents had previously agreed that he not be placed out of his therapeutic placement for more than one week at a time as it would be detrimental to his progress and well-being.

16.    Jason was left without any structure from August 2016 to December 2016 after Cardinal Cushing excluded him from their program.   His routine was changed dramatically, his family could not provide the structure he knew and required at Cardinal Cushing, and he fell apart.   Mom would drive him around for hours or keep him in the bathtub for long periods of time just to soothe him.   He lacked leisure skills and was very difficult to entertain and occupy.   During this time, his sleep disorder worsened and mother was providing 24 hour care.   She experienced exhaustion and her family members would take off time from their jobs to help her.   Family members flew in from Nevada and Buffalo to try to help with Jason and allow Mom to sleep for a few hours.

17.    The pressure on the family caused significant negative consequences.   Mr. M could not

keep up with his 72 hour work week and had to drastically reduce his hours in order to help care for his son. He later lost his second job and needed to take a job that was much lower pay.

18. Mrs. M, a school psychologist, was able to use her sick-time, but was left without many current days. She went to work in June of 2017 with bronchitis- this later turned into pneumonia and was in bed for weeks. Her superiors were very kind and understanding of her situation, but school parents were less understanding. She had to endure several comments of not being in school and how this negatively impacted the children of the families she serves.

19. The family's other son struggled his senior year with a GPA that dropped due the trauma of dealing with his brother's issues that affected every aspect of home life. His drop in grades caused him to lose out on many opportunities for better colleges and scholarships, to his and his parents' detriment. With his brother in the house, James was unable to complete his homework there. He would drive to a store parking lot and park under a light in order to study and do homework. This was a huge inconvenience and discouraging for him.

20. James was late to school due to the need for him at home to help get Jason ready for the day. James was often a target of Jason's outbursts. Hearing that his brother was rejected from one school after another and seeing that no one could effectively handle Jason in the home was terrifying for Jason's brother and put enormous pressure on him. He worried about his own schooling but his own welfare and success took a backseat to his love and concern for his brother and the concern he had for his parents' well-being. Jason's aggression toward his brother increased significantly during this time which was frightening to him. Seeing his brother deteriorate before his eyes was detrimental to his own well-being.

21. The Plymouth Public Schools provided very limited services to Jason which caused his parents severe financial crisis due to trying to piece together any type of service they could find

for Jason as well as expenses due to damage to their home over the five months he was home. The expenses include but are not limited to:

A. Christopher Donovan Center which was very expensive and thought they could take Jason only to tell his parents after only a couple of days that they couldn't handle him.

B. The Bridge Center – a Saturday experience which did help Jason

C. The family vehicle, a van, was ruined during Jason's time without schooling. His parents would take him for drives to calm him or contain him. They suffered from his attempts to escape from his harness and his attacks when he did escape. It was especially difficult when only one parent was available – and this quickly became impossible with it essential that there always be 2 adults. His disrobing and fecal smearing and throwing was a constant issue. The persistent odors from urine and feces, despite family and professional efforts at cleaning, has rendered the van worthless in terms of trade in value. Maintenance (brakes, tires, alignments) was costly and it proved very expensive to keep the vehicle in good working order. Jason also broke vents, cup holders, seat belts, carpeting, etc.

D. Huge increase in gas costs for van with mileage over 50,000 for the 5 months

E. Home water bill jumped $600 during the time Jason was home without a program

F. Parents had to pay for a toilet that was broken at Piecing the Puzzle while Jason was receiving some services with 4 adults working with him 4:1

G. Parents purchased a motorized swing for $1300 with the hope that it would help calm Jason and provide him with some of the stimulation he crav

H. Significant home damage was sustained while Jason was home in his deteriorated state:

   a. Floors severely scratched due to dragging furniture, throwing things, feces and urine staining, nail and screw holes where parents had, in their desperate state, attached large pieces of furniture to the floor so Jason could not topple them.
   b. Broken windows and doors
   c. Destroyed bathroom where tub is cracked, vanity gouged with doors damaged, floor ruined due to water damage and gouges, toilet damaged, walls with holes and water damage, towel bars ruined from trying to hang on them.
   d. Upholstered furniture (sofa, chairs, pillows, throws) ruined due to sprayed urine, feces, (thrown and smeared), spilled liquid.
   e. Wooden furniture destroyed – 3 dining chairs broken and coffee table destroyed (legs broken, gouged with toys, stained)
   f. Comforters, blankets, sheets, pillows, mattresses, towels, bath mats all destroyed despite caution of plastic covers on mattresses and pillows as well as highly

      washable fabrics – despite numerous attempt to salvage - the smells and stains proved to be permanent
      g. brother's cell phone destroyed
      h. brother's treasured gift of a cross and chain broken and lost
      i. Vitamix blender ruined as Jason would turn it on and off as much as he could and push it off the counter while it was plugged in so parts would crash to the floor and the unit would be left dangling (he would do something like this when Mom was desperately trying to contain and clean up the half gallon of juice he grabbed and threw at the kitchen wall)
      j. Lamps, books, unbreakable dishes, cookware destroyed
      k. Kitchen appliances damaged from slamming doors and pushing buttons over and over, hanging on refrigerator door, banging the appliances with pots and pans.

      I. Physical issues:

      a. Mother had to have medical treatment for damage caused by Jason throwing a hard object right onto her foot
      b. Mother has teeth damage needing repair due to Jason's strong and unpredictable head-butts
      c. Parents have hand damage due to having their fingers bent backward while trying to prevent Jason from engaging in dangerous behaviors
      d. Mother had to put off surgery until the summer due to having so limited sick days during the school year.

      J. Job issues for parents due to Jason not having a program:

      a. Mother lost opportunities within her profession because she did not have a minute when she wasn't exhausted to spend on her own personal needs.
      b. Used up most of her sick days caring for Jason
      c. Mother was unable to attend funded professional development needed for her continued certification and lost the opportunity to make it up
      d. Father lost one job
      e. Father had to cut hours on second job to be able to help with Jason at home

22,    The total costs to the parents for this five month period exceeded $75,000 plus immeasurable emotional trauma.

23. It is clear that the District's actions and non-actions has caused serious financial and emotional injury to the family for almost every day of every week, while Jason was out of school, and the District's failure has injured Jason, his parents and his brother.

24. The negligence by the District staff, has caused Jason and his family to suffer severe emotional distress, financial distress and physical distress.  The damage which Jason has suffered is the direct and proximate result of actions and inactions of the Town of Plymouth, Plymouth Public Schools. The district was grossly negligent in their choosing to ignore the precarious and desperate situation of the family being left completely on their own with a significantly disabled child in desperate need of services.

25. The parents of Jason have suffered severe emotional, physical, and financial distress as a result of the mistreatment of their son, the lack of proper services and protections for their son, and their ongoing struggle with the District to put the desperately needed services and supports in place while Jason deteriorated at home without said services and supports.

26. The level of Jason's disabilities has never been disputed by the Plymouth Public Schools.

27. Expressively, Jason gets his needs met through rudimentary approximate gestures, pulling someone to something he wants, grabbing things, etc.  He does not produce spoken words, and has concurrent difficulty using gestures and signs to self-express.

28. Jason was ultimately enrolled in the Evergreen Center where he is slowly improving given his severe disabilities.

29. Jason's general communicative ability is consistent with what his cognitive potential would suggest as his receptive language skills approach the

mid l·year level while his expressive capabilities estimate is relatively lower, approximating the early l.-year age equivalency. Throughout his enrollment at the Evergreen Center, Jason has required constant adult support to complete self· care and domestic care tasks across the school and home residence settings. His community based skills are reportedly insecure for an individual his age and require a high level of close support.

30. Jason also exhibits significant behavior challenges that require ongoing remediation through his structured intervention programming.

31. In sum, Jason now is a young man who receives comprehensive educational programming, specialized residential services, and individualized behavior supports through his placement at the Evergreen Center. Based on available information, he appears to have made good growth given his significant disabilities and severe cognitive impairment.

## COUNT I
## VIOLATION OF TITLE IX 20 USC Section 1681
Against the Plymouth Public Schools

32. The plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 30 as fully set forth herein.

33. Under Title IX and 34 C.F.R. 106.8 public schools must "adopt and publish grievance procedures providing for prompt and equitable resolution of students and employee complaints alleging any action which would be prohibited by this part".

34. On or about August to December 2016 the Plymouth Public Schools and the town of Plymouth by and through its employees and agents and all departments knew that Jason was

denied reasonable and proper educational services which did cost his parents thousands of dollars without justification.

35. During the 2016 school year, Plymouth Public School staff learned that Jason was in severe trauma given the lack of services offered by the Plymouth School District.

36. The emotional trauma suffered by his parents was severe, pervasive and objectively offensive and caused the parents' son to be deprived of educational opportunities and/or benefits to his severe detriment.

37. Defendant, in their official capacities, in violation of Title IX, 20 USC Section 1681 remained deliberately indifferent to the emotional, physical, financial and psychological trauma suffered by the plaintiffs as a direct and proximate result of such violations. Such actions and non-actions did act far outside the known and required practices mandated by the United States Office for Civil Rights.

38. The defendant, the Plymouth Public Schools, failed to provide reasonable and proper services to Jason, and failed to adequately supervise Jason; failed to adequately monitor Jason; and failed to initiate any reasonable measures to protect his parents from the financial disaster they suffered.

39. As a direct and proximate result of such violation, the Defendant acted with deliberate indifference, such that its lack of response was clearly unreasonable in light of the known circumstances and did cause Jason, his brother and his parents, physical injuries, indignities, humiliations, severe emotional distress, and mental anguish, bodily harm and financial injury.

40. Due to the direct and proximate result of the severe violations of the Defendants and the ommisions of appropiate support and services toward the plaintiffs the plaintiffs still suffer from the trama to this day.

## COUNT II
### Negligence
Plymouth Public School

41. The plaintiffs incorporate each and every allegation and averment set forth herein paragraphs 1 through 40 of this complaint as though fully set forth herein.

42. The defendants Plymouth public schools did have a duty to exercise reasonable care to protect students including Jason M. while receiving Special education services from the Plymouth Public Schools and other services programs and facilities.

43. The Plymouth Public Schools in creating special education services for impaired students assume the duty to exercise care and to protect students from harm including Jason M. and his parents.

44. During the fall of the 2016 school year defendants the Plymouth public schools breached their duty of care to protect Jason and his family from physical harm, emotional harm and financial harm as illustrated in the complaint.

45. As a direct and proximate result of the Plymouth public schools negligence Jason and his parents suffered severe emotional distress.

## COUNT III
### Violation of 29 USC section 794
Plymouth Public Schools

46. The plaintiffs incorporate each and every allegation and averment set forth herein

paragraphs 1 through 55 of this complaint as though fully set forth herein.

47. At all times relevant to this complaint the plaintiff Jason was a handicapped person due to the emotional trauma and distress and was qualified to complete his education requirements and participate in therapeutic placement and receive reasonable accommodations and supports.

48. Defendants intentionally failed to provide Jason with reasonable accommodations for his emotional handicaps and trauma which Jason and his family was legally entitled to while Jason was forced to stay in his home due to Plymouths failure to provide a proper placement.

49. As a result of the failure of the defendants to provide Jason with reasonable accommodations and supports to which he was legally entitled to the plaintiff Jason. was denied the benefits of and or subjected to discrimination under the defendants educational program by reason of his handicap created by the horrific damage to his home and emotional trauma to him and his family.

50. As a direct and proximate result of the defendant's conduct the plaintiffs has suffered severe emotional distress, mental anguish, loss of enjoyment of life, loss of dignity and other non pecuniary losses and intangible injuries.

### COUNT IV
### Violation of 42 USC section 12131
Plymouth Public Schools

51. The plaintiffs incorporate each and every allegation and averment set forth herein paragraphs 1 through 64 of this complaint as though fully set forth herein.

52. At all times relevant to this complaint the plaintiff James M. was a severly handicapped person due to a limited inelegance factor with an IQ of 47 or below the 1st percentile and emotional trauma and distress and was not qualified to participate in a public school with reasonable accommodations and supports.

53.     Defendants intentionally failed to provide James M. with reasonable accommodations for his significant disabilities and emotional handicaps and trauma which he was legally entitled to while solely placed in his parents home .

54.     As a result of the failure of the defendants to provide James M with reasonable accommodations and supports to which he was legally entitled to while solely placed with his parents,   the plaintiffs denied the benefits of and subjected to discrimination due to failure to provide an appropriate education plan under the defendants educational program, by reason of his handicap he and his family suffered severe trauma.

55.     The plaintiff's exclusion, denial of benefits, and or discrimination by the defendant caused the plaintiffs severe emotional disability and trauma.

66.     As a direct and proximate result of the defendant's conduct the plaintiffs has suffered severe emotional distress, mental anguish, loss of enjoyment of life, loss of dignity and other nonpecuniary losses and intangible injuries.

## COUNT   V
## Violation of   42 USC section 1983
Plymouth Public Schoola

57.     The plaintiffs incorporate each and every allegation and averment set forth herein paragraphs 1 through 66 of this complaint as though fully set forth herein.

58.     The defendants   have a constitutional right based on the equal protection clause of the 14th amendment to be free from discrimination, intimidation and assaults   based on his gender and disabilities.

59.     The defendants acting under color of law subjected the plaintiffs   to unwelcome and offensive intimidation's, harassment, losses of property and assests.

60.     As a result of the defendant's actions and non-actions the plaintiffs suffered severe

emotional distress, mental anguish, loss of dignity, intangible injuries, and other nonpecuniary losses.

## COUNT VI
### Intentional Infliction of Emotional Distress
Plymouth Public School

61. The plaintiffs incorporate each and every allegation and averment set forth herein paragraphs 1 through 70 of this complaint as though fully set forth herein.

62. As a direct and proximate result of the grievous and outrageous conduct of the defendants the plaintiffs named herein suffered emotional distress and other injuries.

63. The defendants new or should have known that the plaintiffs named herein would likely suffer emotional distress as a result of their conduct and failures and Plymouth Public Schools acted with reckless disregard the likelihood that their conduct would cause such distress.

64. The emotional distress suffered by the plaintiffs named herein were severe and of a nature that no other reasonable person could be expected to endure.

## COUNT VII
### Negligent Infliction of Emotional Distress
Plymouth Public Schools

65. The plaintiffs incorporate each and every allegation and averment set forth herein paragraphs 1 through 74 of this complaint as though fully set forth herein.

66. As a direct and proximate result of the defendant's negligence, the plaintiffs did suffer severe emotional distress is evidenced by defendants action did cause plaintiffs son, Jason M. significant   behavior, complaints and objective symptomlogy.

67. Any reasonable person would have suffered severe emotional distress and trauma under

the circumstances named herein.

### COUNT VII
### Negligence under MGL. C. 258. Section 2
Plymouth Public Schools

68.     The plaintiffs incorporate each and every allegation and averment set forth herein paragraphs 1 through 67 of this complaint as though fully set forth herein.

69.     The named defendants owed a duty to exercise reasonable care for the protection of Jason M. against misconduct and inappropriate conduct and or contact.

70.     The named defendants breached that duty by facilitating and failing to provide appropriate services and did permit ongoing assaults, and intimidations on that they knew or should have known this trauma was occurring in the home of Jason M. was occurring.

71.     By their actions and inactions defendants caused Jason M and his family to be subject to trauma and emotional   intimidation as described above.

72.     As a direct and proximate result of the defendant's negligence the plaintiffs suffered physical injuries, indignities, humiliation, severe emotional distress, mental anguish, and invasion of bodily integrity.

### REQUESTED RELIEF

WHEREFORE the plaintiffs claim judgment against the named defendants and jointly and severally as follows: Compensatory damages in the amount warranted by the evidence at trial;

a.      Punitive damages in the amount warranted by the evidence at trial;

b.      Reasonable attorney's fees and costs incurred in this action;

c.      Such other relief as permitted by statute and as this Court shall consider to be fair and

equitable.

## JURY DEMAND

The parties hereby demand a jury on all claims and issues so triable.

        Respectfully submitted,
        The Plaintiffs
        By their attorney,
        /s/ Michael W. Turner Esq.
        _____
        Michael Turner, Esq
        BBO #: 565820
        242 Wareham Road
        P.O. Box 910
        Marion, MA 02578
        Tel: (508) 748-2362
        Fax: (508) 748-6836
Email   mturner@meganet.net